## The State vs. Bisping.

*October 24—November 15, 1904.*

*Criminal law: Nature and elements of crime: Statutes: Railroads: Placing obstructions on track: Constitutional law: Excessive and unusual punishments: Information: Immaterial allegations: Surplusage.*

1. To constitute an offense under sec. 4386, Stats. 1898 (declaring that any person who shall wilfully, maliciously or wantonly place any obstruction upon the track of any steam, electric or cable railroad in this state, or take up or displace a rail, switch or signal, or remove a spike, or otherwise injure, break down or destroy a bridge, road bed or other structure of such railroad shall be punished, etc.), it is not necessary that the act be one which prevents the safe running of trains or endangers human life.

2. In order to constitute an offense under said sec. 4386, it is not necessary that the obstruction be placed on the track, or that any of the prohibited acts be committed for the purpose of unlawfully, maliciously, and wantonly destroying such railroad.

3. The classification of said sec. 4386, by placing it in the chapter of "offenses against the lives and persons of individuals" does not evince a legislative intent that the element of danger to human life must inhere in any of the acts to make them criminal.

4. The construction of said sec. 4386, above given, does not make the offense a malicious trespass, and therefore said section is not out of harmony and in conflict with secs. 4440, 4440a, Stats. 1898, relating to malicious injury to railroad property.

5. Under sec. 4386, Stats. 1898, relating to placing obstructions, etc., upon railroad tracks, and providing a punishment of from one to ten years imprisonment in the state prison, in view of the serious consequences which may flow from the inhibited acts, there is nothing excessive or unusual in the punishment provided, and hence it cannot be said that the statute contemplates that the acts constituting the offense include only such as are necessarily dangerous to human life.

6. An information set out the acts charged in words of substantially the same meaning of those used in sec. 4386, Stats. 1898, but added the allegation: "For the purpose of then and there

unlawfully, maliciously, and wantonly destroying such rail-
road." *Held,* that the language of the information charged
and informed defendant fully of every fact essential to estab-
lish the offense without the quoted allegation, which was sur-
plusage, and its insertion in no way misled or prejudiced the
defendant.

REPORTED from the municipal court of Milwaukee county:
A. C. BRAZEE, Judge. *First, second and fourth questions
answered in the negative, the others in the affirmative.*

The defendant was tried in the municipal court of Mil-
waukee county upon an information alleging that he, on
April 5, 1902, "did unlawfully, wilfully, maliciously, and
wantonly place an obstruction, to wit, a large stone weighing
about fifty pounds, upon the track of the Chicago, Milwaukee
& Saint Paul Railway Company, a corporation then and
there existing and doing business, which was then and there
a steam railroad, *for the purpose of then and there unlaw-
fully, maliciously, and wantonly destroying said railroad,*
contrary to the statute," etc. The case was submitted to a
jury upon the evidence, who found the defendant guilty of
the offense charged. Before any evidence was received, an
objection was made to the reception of any evidence, because
the information stated no offense under the law. This objec-
tion was overruled. After verdict, motions for a new trial
and in arrest of judgment were made. Upon defendant's re-
quest all proceedings were stayed, and the court certified the
following questions:

"(1) Is the offense described in section 4386 of the Re-
vised Statutes of 1898 limited to acts whereby the safe run-
ning of trains is prevented and human life endangered?

"(2) Does said section 4386 include the offense of placing
an obstruction upon the track of any steam railroad in this
state for the purpose of unlawfully, maliciously, and wan-
tonly destroying said railroad?

"(3) Does the information in this case state an offense
under the provisions of said section 4386?

"(4) Ought the court to grant the motion in arrest of judg-
ment made by the defendant after verdict?

"(5) Can the court lawfully, upon the information and' record hereby certified, proceed to sentence the defendant. upon the verdict returned by the jury in this case ?"

The cause was submitted for the defendant on the briefs of *Hoyt, Doe, Umbreit & Olwell,* and for the plaintiff on that of the *Attorney General* and *W. D. Corrigan,* second assistant attorney general.

SIEBECKER, J.    The court in the first question propounds the inquiry:

"Is the offense described in section 4386 of the Revised Statutes of 1898 limited to acts *whereby the safe running of trains is prevented and human life endangered?*"

The section is as follows:

"Any person who shall wilfully, maliciously or wantonly place any obstruction upon the track of any steam, electric or cable railroad in this state or take up or displace a rail, switch or signal, or remove a spike, or otherwise injure, break down or destroy a bridge, roadbed or other structure of such railroad shall be punished by imprisonment in the state prison not more than ten years nor less than one year."

It is contended that, to constitute an offense as defined in this section by wrongfully placing an obstruction upon the track of a railroad, or in committing any of the other acts enumerated in the section, the act must be charged and found to be *one which prevents the safe running of trains and endangers human life.* Does the offense defined by the section include those elements as claimed ? This must be determined from the contents of the statute, by an examination of its terms in view of the purpose the legislature had in mind and which led to the adoption of the law. It is obvious from a reading of this section that the language employed is neither obscure in meaning nor indefinite in its application. Nor is there uncertainty as to what acts come within its provisions. We must be guided in its interpretation by the rule that, "if the words are free from ambiguity and doubt, and ex--

press plainly, clearly, and distinctly the sense of the framers of the instrument (or act), there is no occasion to resort to other means of interpretation." Sutherland, Stat. Const. (1st ed.) p. 312. Reading the statute in its literal sense, it is plain that the legislative intent was to make it an offense for a person wilfully, maliciously, or wantonly to place an obstruction upon a railroad track, and that the offense is committed when this act is done, regardless of any intent which may have prompted him in the matter. The placing of the obstruction on the railroad track, or the doing of any of the other acts forbidden by the statute, constitutes and completes the offense. From this interpretation it must follow that the act complained of need not prevent the safe running of trains or endanger human life to constitute the offense charged. Nor does the offense include as a necessary ingredient that the obstruction be placed on the track or that any of the prohibited acts be committed "for the purpose of unlawfully, maliciously, and wantonly destroying said railroad." The language of the statute does not cover these elements, nor is it necessary to include them by construction to give the statute a reasonable significance and effect.

It is urged that the classification of the statute by placing it in the chapter of "offenses against lives and persons of individuals" evinces a legislative intent that the element of danger to human life must inhere in any of the acts to make them criminal. While classification of statutes by including them in a chapter under a general division of subjects may aid in ascertaining the legislative intent in cases where it is doubtful or uncertain, it cannot be held to overcome the obvious meaning of the language employed. Nor do we find any force in the contention that this interpretation of the section makes the offense in its character a malicious trespass, and therefore leaves it out of harmony and in conflict with sections 4440 and 4440a, Stats. 1898. A comparison of this

section with the other sections cited reveals the fact that they cover different acts though they come within analogous fields.

It is also asserted that the degree of punishment prescribed by the section in question indicates that when the statute was framed it was contemplated that the acts constituting the offense should include only such as were necessarily danger-ous to human life. We perceive nothing excessive or unusual in the punishment to be inflicted for the offense, in view of the serious consequences which may flow from the inhibited acts.

The third question certified is:

"Does the information filed . . . state an offense under the provisions of section 4386 ?"

The information sets out the acts charged in words of sub-stantially the same meaning as those used in the statute, but adds the allegation: "For the purpose of then and there un-lawfully, maliciously, and wantonly destroying said railroad." It is urged that this allegation is material in charging the offense to show that the particular offense charged related to an injury to property which was at the time in use for rail-road purposes. We think the language employed charges and informs defendant fully of every fact essential to establish the offense without this allegation, which thus becomes sur-plusage. *State v. Siegel,* 54 Wis. 86, 11 N. W. 435. The allegation is wholly immaterial to the charge, and its inser-tion could in no way mislead or prejudice the defendant. The general rule is that surplusage does not vitiate the informa-tion, and should be stricken out unless it be so interwoven with material allegations that it cannot be so stricken out without carrying with it material parts of the charge. The allegation is in no way combined with or made a part of a material one, and therefore it may be disregarded, and re-jected as surplusage. *Commonweath v. Dyer,* 128 Mass. 70.

The motion in arrest of judgment should be denied, and

the court should proceed to sentence.   Nothing remains to be said in answering the questions certified.

*By the Court.*—The first, second, and fourth questions are answered in the negative, and the third and fifth questions are answered in the affirmative.