STEENO, Plaintiff in error, v. STATE, Defendant in error. [Case No. 76–388–CR.]

STUBBENDICK, Plaintiff in error, v. STATE, Defendant in error. [Case No. 76–660–CR.]

Supreme Court

*Nos. 76–388–CR, 76–660–CR. Submitted on briefs October 4, 1978. —Decided October 31, 1978.*

(Also reported in 271 N.W.2d 396.)

For the plaintiff in error the cause was submitted on the brief of *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Nadim Sahar,* assistant attorney general.

COFFEY, J. Steeno was convicted on August 24, 1976 for being in violation of sec. 343.44(2), Stats. 1975. The conviction was his third under that statute and he was accordingly sentenced to one year in the Brown County jail pursuant to the mandatory sentencing provisions of the statute. Steeno filed a post-conviction motion pursuant to sec. 974.06, Stats., alleging the one year mandatory imprisonment provision under sec. 343.44(2), Stats., constituted cruel and unusual punishment contrary to the Eighth Amendment of the United States Constitution and art. I, sec. 6 of the Wisconsin Constitution. Steeno's post-conviction motion was denied, the county court noting that while the statute may be harsh, the constitutional issue should be decided by an appellate court. On appeal to the circuit court, the county court's denial of the motion was affirmed.

By an order of this court dated June 28, 1977, the Stubbendick case was consolidated with Steeno's appeal. Factually, in all matters of legal significance, Stubbendick is identical except that the case arises out of the Rock County Court, the Hon. Edwin C. Dahlberg presiding; the judgment of conviction affirmed by the Hon. Arthur L. Luebke, Circuit Judge presiding.

*Issue:*

Whether the one year mandatory imprisonment provision of sec. 343.44(2), Stats., for persons convicted of a third or subsequent violation of this statute, is unconstitutional as constituting cruel and unusual punishment?

This appeal challenges sec. 343.44(2), Stats. 1975 on the constitutional grounds that the mandatory one year imprisonment provided in the statute for the third conviction of driving after license revocation constitutes cruel and unusual punishment. The statute is now amended,[1] but at the time of this appeal, read as follows:

"343.44(2) Any person violating this section may be fined not less than $100 nor more than $400 and shall be imprisoned not less than 10 days nor more than one

---

[1] Sec. 343.44(2), Stats. (1975) was amended by ch. 165, Laws of 1977 and presently reads:

"343.44(2) Any person violating this section may be fined not less than $100 nor more than $400 and shall be imprisoned not less than 10 days nor more than 6 months for the first offense. For a 2nd conviction within 5 years a person may be fined not less than $100 nor more than $400 and shall be imprisoned not less than 30 days nor more than 6 months. For a 3rd conviction within 5 years a person may be fined not less than $100 nor more than $400 and shall be imprisoned not less than 60 days nor more than 6 months. For a 4th conviction within 5 years, a person may be fined not less than $100 nor more than $400 and shall be imprisoned not less than 90 days nor more than 6 months. For a 5th or subsequent conviction within 5 years a person may be fined not less than $100 nor more than $500 and shall be imprisoned for 6 months. Refusal to accept or failure to receive an order of revocation or suspension mailed by 1st class mail to such person's last-known address shall not be a defense to the charge of driving after revocation or suspension. If such person has changed his address and fails to notify the divsion as required in s. 344.22 then failure to receive notice of revocation or suspension shall not be a defense to the charge of driving after revocation or suspension." It will be noted that the term of imprisonment has been reduced to six months; but the requirement of mandatory imprisonment has not been changed.

year in the county jail, except that if a person violates this section after having had his operating privilege revoked because of a conviction of any of the offenses mentioned in s. 343.31, he shall be imprisoned not less than 10 days nor more than one year in the county jail for the first violation of this section and shall be imprisoned not less than 90 days nor more than one year in the county jail for the 2nd such violation and shall be imprisoned for one year in the county jail for the 3rd and each subsequent violation. Refusal to accept or failure to receive an order of revocation or suspension mailed by 1st class mail to such person's last-known address shall not be a defense to the charge of driving after revocation or suspension. If such person has changed his address and fails to notify the division as required in s. 343.22 then failure to receive notice of revocation or suspension shall not be a defense to the charge of driving after revocation or suspension."

There have been two previous constitutional challenges brought against this statute. The first was *State v. Duffy,* 54 Wis.2d 61, 194 N.W.2d 624 (1972), followed by the recent case of *State v. Sittig,* 75 Wis.2d 497, 249 N.W.2d 770 (1977). In both cases the statute was found constitutionally sound against equal protection challenges. The rationales of *Duffy* and *Sittig* merit consideration in the review of this appeal.

The basic contention in *State v. Duffy* was that sec. 343.44(2), Stats. (1965)[2] constituted a denial of equal protection as the statutory construction of "shall be imprisoned" did not permit the granting of probation for the convicted offender. The court's equal protection analysis found that the class of persons who drive after revocation constituted neither an inherently suspect classification nor was the classification irrational or arbitrary. *State v. Duffy, supra* at 66. The court looked

[2] The statute at that time provided for a mandatory term of imprisonment of 180 days for a third conviction of driving after revocation.

to the statute's underlying legislative policy in rejecting the proposition that the classification was irrational or arbitrary:

"SECTION 1. STATEMENT OF POLICY. In view of the immensity of the state's traffic problem, and, if not acted on, its certainty to increase, the legislature recognizes that new controls are necessary. But it also recognizes the folly of providing new penalties and controls when existing laws are not enforced. It is therefore declared that the people of the state of Wisconsin acting through their chosen representatives determine to reduce the motor vehicle accident rate by rigid enforcement of all traffic safety laws, and by this act traffic laws of this state and local ordinances enacted pursuant thereto, vigorously. The gravity of the problem, and the devastating power of the machine no longer permits countenance of the myriad excuses of careless drivers which were, in an earlier day, tiresome, but which have now become lethal." *State v. Duffy, supra* at 66. (Legislative Note: ch. 292, Laws of 1967).

Having found a rational basis for the classification the court reaffirmed the concept that it is within the legislative province "to determine penalties for the particular evil sought to be remedied." *Id.* at 66–67.

In *State v. Sittig, supra,* the court found the mandatory imprisonment provision not to constitute a violation of the doctrine of separation of powers. The court emphasized that while criminal sentencing is an exclusive function of the court, there is no inherent power in the judiciary to determine the nature of the punishment and it would be a judicial usurpation to stay or suspend a criminal sentence in the absence of statutory authority. *State v. Sittig, supra* at 500. The equal protection challenge was again raised and rejected, the court stating:

"In *State v. Duffy, supra,* this court held that the mandatory sentencing provision of sec. 343.44(2), Stats., does not deny equal protection to those persons sentenced thereunder. Defendant's argument that statistics

demonstrate the crime of operating a vehicle after revocation of a license is not a contributor to the high rate of automobile accidents ignores the fact that those who commit this offense have had their licenses revoked for the reason that they have repeatedly committed the types of violations which are among the greatest contributing circumstances. Here, the defendant's record of violations, which have resulted in revocation, contains numerous violations, including speeding, reckless driving, driving under the influence of alcohol, attempting to elude an officer, and more. Thus, it is obvious the mandatory sentencing provision of sec. 343.44(2) does not represent an unjustifiable public policy, and this does not deny equal protection, for its purpose is to decrease automobile accidents and injuries by imposing a fair penalty upon those who have shown they are most likely to cause these accidents." *State v. Sittig, supra* at 501.

While the issue raised in this appeal differs from the equal protection challenges in *Duffy* and *Sittig,* the arguments offered to support the cruel and unusual punishment contention are nearly identical as in the earlier cases. These arguments will once again be reviewed, but this time by applying the legal test for determining whether a criminal sentence constitutes cruel and unusual punishment. The test is whether the sentence is:

". . . so excessive and unusual, and so disproportionate to the offense committed, as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." *State v. Pratt,* 36 Wis.2d 312, 322, 153 N.W.2d 18 (1967). *See also: Hanson v. State,* 48 Wis.2d 203, 206, 179 N.W.2d 909 (1970).

The following is also instructive as to Eighth Amendment considerations:

"The primary purpose of that clause has always been considered, and properly so, to be directed at the method or kind of punishment imposed for the violation of criminal statutes; the nature of the conduct made crim-

inal is ordinarily relevant only to the fitness of the punishment imposed. See, *e.g.*, *Trop v. Dulles*, 356 U.S. 86 (1958); *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459 (1947); *Weems v. United States*, 217 U.S. 349 (1910)." *Powell v. Texas*, 392 U.S. 514, 531-32 (1968).[3]

The defendant claims that it is shocking to the public conscience that upon a third conviction for an offense to sec. 343.44(2) that a court has no choice but to imprison the offender for one year. The defendant argues that sec. 343.44(2) is "unique" as one of the few statutes in this state which requires mandatory imprisonment as distinguished from mandatory sentencing.[4] In distinguishing mandatory imprisonment and mandatory sentencing, the defendant claims it to be shocking that while sentencing is mandatory for first degree murder, sec. 940.01, Stats. 1975 provided for judicial discretion in permitting the granting of probation and the execution of the sentence stayed.[5] The argument claiming an irrational basis for the penalty when sec. 343.44(2) is compared to more violent crimes was raised in *State v. Duffy, supra.* In addressing the argument as an equal

---

[3] *See generally:* "The Cruel and Unusual Punishment Clause and the Substantive Criminal Law," 79 Harv. L. Rev. 625 (1966).

[4] Ch. 173, Laws of 1977 has made sentencing mandatory for every offense. Offenses are now classified with corresponding and uniform penalties for each class of felonies, misdemeanors or forfeitures. While treason, sec. 946.01, Stats., had formerly carried a mandatory life imprisonment, under the new classification scheme, probation or a stay of execution is now available. Ch. 173, Laws of 1977, §114.3. Similarly, the mandatory imprisonment for carrying a concealed weapon, sec. 943.23, is now abolished and a conviction for the offense is also subject to probation or stay of execution.

[5] *See Wilson v. State*, 77 Wis.2d 15, 252 N.W.2d 64 (1977) where the statutory language "shall be sentenced" is distinguished from "shall be imprisoned." Factually, the court affirmed the sentencing of the defendant to life imprisonment for first degree murder, the sentence's execution being stayed and the defendant being placed on probation for fifteen years.

protection problem the court found that the unavailability of probation does not render the statute defective and that it is constitutionally inconsequential that some inequality may result from a classification once a rational basis has been found for the classification. *Id.* at 65 and 67.

The rationale supporting this holding from *Duffy* is no less valid because of the passage of time. In fact, today there are more cars on the Wisconsin highways than at any previous time. The rationale in *Duffy* is that those persons who drive after revocation constitute a threat to the property and personal security of Wisconsin motorists. *Supra* at 66. The car of today, with engineering emphasis placed upon the power and speed of an automobile's engine, is a crippling, if not lethal, weapon in the hands of an irresponsible driver.

The challenged statute is designed as a deterrent to those persons who have lost their driving licenses by repeated conduct in disregard of the traffic laws. The granting of an automobile license to operate a motor vehicle is a privilege and not an inherent right. This privilege is not to be consistently abused without the expectation of serious consequences, such as loss of the driving privilege, combined with a money fine and a period of incarceration. But sec. 343.44(2) offenders have not only lost their licenses by excessive conduct in disregard of the traffic laws, they now flaunt that sanction by continuing to drive without fear of apprehension. In view of the danger to property and person the public rightfully demands freedom from reckless motor vehicle operators.[6] This is of paramount concern to all and

---

[6] The concept of mandatory imprisonment for conduct endangering the general public was upheld in *State v. Bisping*, 123 Wis. 267, 101 N.W. 359 (1904). In *Bisping* there was no cruel and unusual punishment found by a statute providing for mandatory

thus warrants criminal penalties. We reaffirm the holding that the Constitution does not absolutely prevent the legislature from acting in the public interest by constricting the exercise of judicial discretion in matters pertaining to the criminal sentencing of sec. 343.44(2) violators. *State v. Sittig, supra* at 500.

We do not find the public sentiment to be shocked by the imprisonment of drivers who have lost their driving privileges because of repeated traffic violations and then compound their disregard of the law by being cited for driving three times thereafter. Violations of sec. 343.44(2) are usually discovered when a driver is stopped for some other traffic infraction and the motorist cannot produce a valid driver's license. In Steeno's case, his status as a license revokee was revealed after being stopped for crashing through a railroad barricade in violation of sec. 346.44, Stats. He was stopped a second time later the same evening for suspicion of operating a motor vehicle while under the influence of an intoxicant when his car crossed a center island.

Steeno's persistence in driving after revocation and after being stopped and given a citation, typifies the deliberate offender sec. 343.44(2) seeks to eliminate from the roads of this state. Sec. 343.44(2) is essentially in the nature of a repeater statute and such statutes have been consistently upheld as not constituting cruel and unusual punishment.[7] The public conscience

imprisonment for wilful conduct in placing obstructions upon railroad tracks.

[7] Repeater Statutes permitting the mandatory imposition of greater terms of confinement have been upheld as not constituting cruel and unusual punishment. *State v. Dean* (N.H.) 345 A.2d 408 (1975); *McDonald v. Mass.*, 180 U.S. 311 (1901); *Moore v. Missouri*, 159 U.S. 673 (1895). *See generally: Zarsky v. State*, 281 So.2d 553 (Fla. App. 1973); No cruel and unusual punishment in revocation of license for being "habitual traffic offender."

is not shocked by the imposition of greater penalties to those persons who repeatedly and flagrantly flout the law.[8] When the defendant argues that compared to more violent crimes permitting probation or stay of execution, sec. 343.44(2) is cruel and unusual punishment for not permitting those sentencing alternatives, the argument ignores the plain fact that it is doubtful whether probation or stay of execution would be granted to a party with a history of criminal involvement equivalent to the driving record of a sec. 343.44(2) violator.

The mandatory imprisonment of license revokees for their third conviction of sec. 343.44 is supported in *State v. Fearick,* 69 N.J. 32, 350 A.2d 227 (1976). In *Fearick* a New Jersey statute was upheld as not constituting cruel and unusual punishment for providing mandatory imprisonment for license revokees who are involved in an auto accident causing personal injury. The rationale of the *Fearick* decision stressed that public policy urges a strong deterrent to such flagrant violation of the law. *Supra* at 230–31. The Wisconsin statute cannot be constitutionally suspect merely because it does not wait for this class of illegal drivers to do physical harm to the general public.[9] This court is cognizant of a practical problem caused by persons who persist in driving after revocation. That problem is that a license revokee can neither buy insurance nor obtain a financial responsi-

---

[8] *Block v. State,* 41 Wis.2d 205, 163 N.W.2d 196 (1968) where it was stated at 213, ". . . it must be remembered the repeater statute was passed for the very purpose of increasing the punishment of those persons who do not learn their lesson or profit by the lesser punishment given for their prior violations of the criminal laws." *See also: Hanson v. State, supra* at 208.

[9] For a different solution to the problem of revokee driver see: *Commonwealth v. One 1970, 2 Dr H.T. Lincoln Automobile, Identification Number OY89A826833,* 212 Va. 597, 186 S.E.2d 279 (1972): No cruel and unusual punishment when statute requires revokee to forfeit custody of his car to the state.

bility bond. Even though monetary compensation is often an inadequate substitute for the personal suffering that may result from an auto accident, the fund guaranteed by the financial responsibility laws of this state will at least mitigate the concomitant economic pressures placed upon an innocent victim.

As in *State v. Duffy, supra* and *State v. Sittig, supra,* we do not find sec. 343.44(2) constitutionally defective. A mandatory one year term of imprisonment for those who cannot abide by this state's traffic laws and who persist in driving after having their drivers' licenses revoked does not shock the public conscience so as to constitute cruel and unusual punishment. In light of the potential for great harm caused by such persons public sentiment demands a strong legislative response to the problem,[10] including the mandatory imprisonment of drivers who have no respect for the motor vehicle laws of this state.

*By the Court.*—Judgment and order affirmed.

As to Case *No. 76–660–CR,* Kenneth W. Stubbendick, Plaintiff in Error, v. State of Wisconsin, Defendant in Error, for all of the above-stated reasons, judgment and order are affirmed.

---

[10] By ch. 193, Laws of 1977, sec. 15 imprisonment is now mandatory for second and subsequent offenses for drunk driving, contrary to sec. 346.65(2). This treatment of drunk driving is totally consistent with sec. 343.44 and reaffirms the Wisconsin policy to take strong measures against those who repeatedly abuse their driving privileges.