STATE of Wisconsin, Plaintiff-Appellant-Cross-Respondent-Petitioner.

v.

Christopher S. BAKER, Defendant-Respondent-Cross-Appellant-Cross-Petitioner.

Supreme Court

*Nos. 90-2633-CR, 90-2634-CR. Submitted on briefs May 28, 1992.—Decided June 18, 1992.*

(Also reported in 485 N.W.2d 237.)

For the plaintiff-appellant-cross respondent-petitioner the cause was submitted on the briefs of *Jerome S. Schmidt,* assistant attorney general, and *James E. Doyle,* attorney general.

For the defendant-respondent-cross appellant-cross petitioner the cause was submitted on the briefs of *Steven L. Miller* and *Zuidmulder, Appel & Gammeltoft, S.C.,* Green Bay.

SHIRLEY S. ABRAHAMSON, J.   Both the state and the defendant Christopher S. Baker seek review of a published decision of the court of appeals, *State v. Baker,* 165 Wis. 2d 42, 477 N.W.2d 292 (Ct. App. 1991), affirming an order of the Circuit Court for Brown County, Judge Carl R. Fenwick. The petition and cross-petition for review present four issues, all arising from the statutory scheme providing progressive penalties for successive convictions of operating a motor vehicle after revocation or suspension of a license: (1) May a defendant collaterally attack a prior conviction for operating a motor vehicle after revocation (OAR) in a subsequent OAR proceeding? (2) If a defendant may collaterally attack prior OAR convictions in a subsequent OAR case, is the defendant limited to asserting a violation of the constitutional right to counsel? (3) If collateral attack on a prior OAR conviction is not limited to a violation of the constitutional right to counsel, was the defendant's third OAR conviction subject to collateral attack on the ground that the defendant did not enter a guilty plea knowingly, voluntarily, and intelligently? (4) Did the defendant's second OAR conviction violate the constitutional right to counsel?

We conclude that for sentencing purposes under sec. 343.44(2), Stats., a defendant may collaterally attack a prior OAR conviction allegedly obtained in violation of the defendant's constitutional rights; the defendant is not limited to asserting a violation of the constitutional right to counsel. We hold that Baker's third OAR conviction is constitutionally infirm for sentencing purposes under sec. 343.44 because it was obtained in violation of the due process requirement that a guilty plea be entered knowingly, voluntarily, and intelligently. Further, we hold that Baker's second OAR conviction is constitutionally infirm for sentencing purposes under sec. 343.44

55

because it was obtained without counsel. Accordingly, we affirm that part of the court of appeals' decision which affirms the circuit court's order setting aside the third OAR conviction; we reverse that part of the court of appeals' decision which affirms the circuit court's order refusing to set aside the second OAR conviction; and we remand the cause for further proceedings.

## I.

The relevant facts for purposes of this review are undisputed. In March 1990, Baker was charged with two OAR violations pursuant to sec. 343.44(1) and (2)(e), Stats. 1989-90, and two counts of habitual traffic offender for operating a vehicle on February 20, 1990, and February 24, 1990. The state asserted that these two violations constituted the defendant's fifth and sixth offenses under this statute within five years. The penalties for any offense subsequent to a fifth offense are the same as those for a fifth offense.

Baker had been convicted of four prior OAR offenses. The first conviction was on November 1, 1985, for driving on September 18, 1985; the second on April 28, 1986, for driving on March 25, 1986; the third on September 11, 1986, for driving on June 28, 1986; and the fourth on April 18, 1989, for driving on January 17, 1989.

Section 343.44(2) provides for progressively greater penalties for each successive OAR conviction. For the first conviction, the statute sets forth a maximum $600 forfeiture. For the fifth or subsequent convictions within a five year period, the statute sets forth a minimum $2,000 fine and six months in jail. Section 343.44, Stats.

1989-90,[1] provides as follows:

**343.44 Driving while disqualified, out of service or after license revoked or suspended.**
**(1)** No person whose operating privilege has been duly revoked or suspended pursuant to the laws of this state shall operate a motor vehicle upon any highway in this state during such suspension or revocation . . ..

**(2)** . . . [A]ny person violating this section:

(a) For the first conviction under this section or a local ordinance in conformity with this section within 5 years the person shall forfeit not less than $150 nor more than $600 . . ..

(b) ˙ 1. [F]or a 2nd conviction . . . within 5 years, a person shall be fined not less than $300 nor more than $1,000 and shall be imprisoned not less than 10 days nor more than 6 months.

. . .

(c) 1. [F]or a 3rd conviction . . . within 5 years, a person shall be fined not less than $1,000 nor more than $2,000 and shall be imprisoned not less than 30 days nor more than 9 months.

. . .

(d) 1. [F]or a 4th conviction . . . within 5 years, a person shall be fined not less than $1,500 nor more than $2,000 and shall be imprisoned not less than 60 days nor more than one year in the county jail.

. . .

(e) 1. [F]or a 5th or subsequent conviction . . . within 5 years, a person shall be fined not less than $2,000 nor more than $2,500 and shall be imprisoned not less than 6 months nor more than one year in the county jail.

. . .

[1]Section 343.44, Stats. 1985-86, and sec. 343.44, Stats. 1989-90, read essentially the same for purposes of this appeal.

On July 17, 1990, Baker filed a pretrial motion to have the second and third OAR convictions declared void for purposes of sentencing under sec. 343.44(2). On September 18, 1990, the circuit court issued a memorandum decision declaring the third conviction void for sentencing purposes but not the second. On September 17, 1991, the court of appeals affirmed.

Both the circuit court and the court of appeals concluded that Baker could, for sentencing purposes, collaterally attack a prior OAR conviction on constitutional grounds. The court of appeals affirmed the circuit court's setting aside Baker's third OAR conviction. Baker had been convicted on the basis of a guilty plea entered by his attorney in Baker's absence. Because the record did not affirmatively show that Baker's plea was "knowingly, voluntarily, and intelligently made," the court of appeals concluded that Baker had been deprived of due process.

The court of appeals affirmed the circuit court's refusal to set aside the second OAR conviction. It concluded that Baker failed to meet his burden of proving that his right to counsel had been violated. The transcript of the proceeding leading to his second conviction had been lost. The circuit court was advised that the court reporter of the Brown County Circuit Court who had transcribed the proceedings stated that her notes had probably been destroyed. Baker therefore relied solely on his own affidavit stating that he had not been represented by counsel and that he had not waived the right to counsel. The court of appeals concluded that this proof was insufficient.

On January 7, 1992, this court granted both the state's petition for review challenging the invalidation of the third OAR conviction and Baker's cross-petition for

review challenging the refusal to invalidate the second OAR conviction.

We first examine whether a defendant may collaterally attack a prior OAR conviction in a subsequent OAR proceeding for sentencing purposes. We then consider whether the constitutional grounds for collaterally attacking prior convictions for sentencing purposes are limited to violations of the right to counsel. We next discuss the constitutionality of Baker's guilty plea in the third OAR conviction. Finally we consider whether Baker's second OAR conviction violated his right to counsel.

## II.

The state asserts that the court of appeals erred in permitting Baker to collaterally attack a prior OAR conviction in a subsequent OAR case for sentencing purposes. To support its position, the state relies on what it describes as the general rule precluding collateral attack on a judgment, absent fraud or lack of jurisdiction. The state argues that the interests of finality ordinarily require that collateral attack be limited.

Relying on four United States Supreme Court decisions, the court of appeals concluded that a defendant may, for sentencing purposes, collaterally attack a prior OAR conviction in a subsequent OAR proceeding on constitutional grounds. We agree with the court of appeals. We conclude that the United States Supreme Court decisions establish the following rule: A defendant may, in a subsequent proceeding, collaterally attack a prior conviction obtained in violation of the defendant's right to counsel if the prior conviction is used to support guilt or enhance punishment for another offense. A

defendant may not, in a subsequent proceeding, collaterally attack a prior conviction if the prior conviction is used to identify the defendant as a member of a potentially dangerous class of individuals. We shall explore the development of this rule, whether it extends beyond violations of the right to counsel, and its application to the facts of this case.

The first case we examine is *Burgett v. Texas,* 389 U.S. 109 (1967). In *Burgett,* the defendant was convicted of "assault with malice aforethought with intent to murder; repetition of offense." The indictment included allegations of four previous felony convictions which, if found to be true, would subject the defendant to a term of life imprisonment upon conviction of the assault charge. The prior convictions were obtained without the defendant's valid waiver of the assistance of counsel in violation of *Gideon v. Wainwright,* 372 U.S. 335 (1963). The United States Supreme Court ruled that the admission of evidence of a prior conviction obtained in violation of *Gideon* was inherently prejudicial and reversed the conviction. The court wrote:

> To permit a conviction obtained in violation of Gideon v. Wainright to be used against a person either to *support guilt or enhance punishment for another offense* . . . is to erode the principle of that case. Worse yet, since the defect in the prior conviction was denial of the right to counsel, the accused in effect suffers anew from the deprivation of that Sixth Amendment right.

*Burgett,* 389 U.S. at 115 (citation omitted) (emphasis added).

The United States Supreme Court followed the *Burgett* holding in two 1972 decisions, *United States v. Tucker,* 404 U.S. 443 (1972), and *Loper v. Beto,* 405 U.S.

473 (1972). In *Tucker,* the Court granted a prisoner's petition for a writ of habeas corpus because at sentencing the trial court considered two prior convictions which were defective because of lack of counsel. The Court applied *Burgett* to overrule this use of invalid prior convictions to "enhance punishment."

In *Loper,* the Court applied *Burgett* to overrule the use of invalid prior convictions to "support guilt." When cross-examined about his previous criminal record, the defendant admitted to four previous criminal convictions. The state's sole purpose in using the prior convictions, which had been obtained in violation of *Gideon,* was to destroy the defendant's credibility; the likely effect of impeaching the defendant's credibility was to imply, if not prove, guilt. The jury convicted the defendant of the newly charged offense.

The Supreme Court's plurality opinion in *Loper* concluded that a defendant's due process rights were violated when the state used evidence of prior convictions invalid under *Gideon* to impeach the defendant's credibility and support conviction. The Court wrote that the violation of the right to counsel undermines " 'the very integrity of the fact-finding process' in criminal trials, and that any conviction obtained in violation of that right 'lacked reliability.' " *Loper,* 405 U.S. at 484 (citation omitted).

The United States Supreme Court appears to have limited the *Burgett, Tucker,* and *Loper* holdings in *Lewis v. United States,* 445 U.S. 55 (1980), written by Justice Blackmun who had authored dissenting opinions in both *Tucker* and *Loper.*[2]

---

[2]For discussions of the use of invalid prior convictions, see Paul D. Leake, *Limits to the Collateral Use of Invalid Prior Convictions to Enhance Punishment for a Subsequent Offense: Extending Burgett v. Texas and United States v. Tucker,* 19

In *Lewis,* the Court faced the question whether the defendant's prior conviction, assumed invalid under *Gideon* because the defendant was without assistance of counsel, could be used as the predicate for classifying the defendant as a convicted felon and subjecting him to criminal liability for knowingly possessing firearms in violation of the Omnibus Crime Control and Safe Streets Act of 1968. The statutory language provides in relevant part:

> Any person who . . . has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony . . . and who receives, possesses, or transports in commerce or affecting commerce . . . any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

*Lewis,* 445 U.S. at 56 n.1.

Relying primarily on the broad language of the statute, the Court upheld the use of the prior invalid conviction to support a conviction of knowingly receiving and possessing a firearm by a felon. In the Court's view, the legislative intent was to impose a civil disability (inability to possess a firearm) on a class of persons (convicted felons) and to enforce that disability through a criminal sanction. Considering the availability of other statutory means to remove the disability (such as a pardon or a direct challenge to the conviction), the Court inferred that Congress intended the defendant to clear his status before obtaining a firearm. *Lewis,* 445 U.S. at 64–65.

Colum. Hum. Rts. L. Rev. 123 (1987); Note, *Sixth Amendment Limits on Collateral Use of Uncounseled Convictions,* 91 Yale L.J. 1000 (1982); Recent Cases, *Constitutional Law: Sixth Amendment—Right to Counsel—Use of Prior Uncounseled Convictions,* 14 Akron L. Rev. 155 (1980).

Congress "could rationally conclude that any felony conviction, even an allegedly invalid one, is a sufficient basis on which to prohibit the possession of a firearm." *Lewis,* 445 U.S. at 66.

*Lewis* reaffirms *Burgett, Tucker,* and *Loper,* while distinguishing them. The *Lewis* Court asserted that in *Burgett, Tucker,* and *Loper* the subsequent conviction or sentence "depended on the reliability of a past uncounseled conviction" and thus the use of the invalid prior conviction in the subsequent proceeding repeated the violation of the right to counsel. *Lewis,* 445 U.S. at 67. In contrast, according to the *Lewis* Court, the federal gun laws "*focus not on reliability, but on the mere fact of conviction,* or even indictment, in order to keep firearms away from potentially dangerous persons." 445 U.S. at 67 (emphasis added). The gun laws only identify a "class of persons who should be disabled from dealing in or possessing firearms because of potential dangerousness . . . .. Enforcement of that *essentially civil disability* through a criminal sanction does not 'support guilt or enhance punishment.' " 445 U.S. at 67 (emphasis added).[3]

---

[3]Another case related to the Supreme Court decisions discussed above is *Baldasar v. Illinois,* 446 U.S. 222 (1980). In *Baldasar,* the majority concluded that although an uncounseled misdemeanor conviction may be constitutionally valid if the offender is not incarcerated, the conviction may not be used under an enhanced penalty statute to convert a subsequent misdemeanor into a felony with a prison term. Four of the five justices in the majority reasoned that the use of the valid uncounseled misdemeanor conviction would violate the defendant's right to counsel in the subsequent proceeding.

In *State v. Novak,* 107 Wis. 2d 31, 318 N.W.2d 364 (1982), this court read the *Baldasar* plurality opinion narrowly. The court concluded that the state is not prohibited from using a prior civil forfeiture conviction for operating a motor vehicle while intoxi-

Baker argues that the OAR statute under which he is charged is a repeater statute and therefore his prior OAR convictions are being used to "enhance punishment" in violation of *Burgett.* The state argues that the OAR statute is not a repeater statute but that it merely identifies a potentially dangerous class of previously convicted individuals. The state characterizes the OAR statute as the enforcement of a civil disability through a criminal sanction and argues that the rationale of *Lewis* should apply.

Like the court of appeals and the circuit court, we are persuaded that Baker's interpretation of the statute is correct. We conclude that the OAR statute uses prior OAR convictions primarily to enhance punishment, not to identify and classify a defendant or to enforce a civil disability with a criminal sanction. When the state revokes a person's license, the state thereby identifies and classifies that person as a potentially dangerous individual who should not drive a motor vehicle and alerts that person to this status.[4] Each subsequent viola-

---

cated (OWI), constitutionally obtained without the assistance of counsel, to enhance the penalty to a jail term for a subsequent OWI conviction.

In this case Baker alleges that his prior OAR criminal convictions upon which the enhanced punishment is based were not constitutionally obtained. Accordingly neither *Novak* nor *Baldasar* governs this case.

[4]*State v. Orethun,* 84 Wis. 2d 487, 267 N.W.2d 318 (1978), supports this characterization of the statute. In *Orethun,* the defendant was convicted of a six point speeding violation on December 2, 1974. Consequently, the Department of Motor Vehicles revoked his license for a period of six months for accumulating twelve demerit points in a twelve-month period. On May 21, 1975, the defendant was charged for operating after revocation. In June 1975, a circuit court vacated the December conviction for

tion of the OAR statute is not used to identify or classify the defendant or to create a new status. Each subsequent violation of the OAR statute subjects a defendant to an increased penalty.

The state relies on *State v. Banks,* 105 Wis. 2d 32, 45, 313 N.W.2d 67 (1981), in which the court interpreted the statute governing operating a motor vehicle while intoxicated (OWI), sec. 346.65, Stats. 1979-80.[5] The

the six point violation. In August 1975, the trial court convicted the defendant of OAR even though the conviction that caused the revocation of his license was vacated. This court affirmed the OAR conviction, holding that the defendant had to abide by the terms of the revocation until his operating privileges were reinstated.

In a fact situation similar to *Orethun,* the Maine Supreme Court applied *Lewis* and ruled as our court did in *Orethun,* stating: "Maine has a legitimate interest in the use of imprisonment sanctions to deter prospective motor vehicle operators from flouting the civil disability classification of an habitual offender, so long as the classification stands unreversed, to assure maximum safety for all other travelers on the public highways of the State, notwithstanding any impairment in the proceedings leading to the habitual offender adjudication . . .." *State v. O'Neill,* 473 A.2d 415, 419 (Me. 1984).

[5]Section 346.65, Stats. 1979-80, stated in relevant part:

(2)(a) Any person violating s. 346.63(1) [operating a motor vehicle while under the influence of an intoxicant or a controlled substance]:

1. Shall forfeit not less than $100 nor more than $500, except as provided in subd. 2 or 3.

2. Shall be fined not less than $250 nor more than $1,000 and imprisoned not less than 5 days nor more than 6 months if the total of revocations under s. 343.305 and convictions for violations of s. 346.63(1) . . . equals 2 within a 5-year period . . ..

3. Shall be fined not less than $500 nor more than $2,000 and imprisoned for not less than 30 days nor more than one year in the county jail if the total of revocations under s. 343.305 and convictions for violations of s. 346.63(1) . . . equals 3 or more within a 5-year period . . ..

court wrote that because the OWI statute "differs in nature from that of the general repeater statutes . . . [the sanctions shall] be applied in a manner substantially different from repeater penalties generally." The issue in *Banks,* however, was a limited one, namely the timing of the offenses. The *Banks* court decided only that a defendant may receive a penalty as a repeater under the OWI statute even though the first conviction occurred *after* the commission of the offense leading to the second conviction. (The court had not ascribed this interpretation to the state's general repeater statutes.)

The court explicitly limited the relevance of the *Banks* distinction between a general repeater statute and the OWI statute in *State v. McAllister,* 107 Wis. 2d 532, 535, 319 N.W.2d 865 (1982). In describing the OWI statute, the court wrote: "This graduated penalty structure is nothing more than a penalty enhancer similar to a repeater statute which does *not in any way alter the* nature of the substantive offense, *i.e.,* the prohibited conduct, but rather goes only to the question of punishment." *McAllister,* 107 Wis. 2d at 535. Furthermore, in *Steeno v. State,* 85 Wis. 2d 663, 672, 271 N.W.2d 396 (1978), the court wrote that the OAR statute "is essentially in the nature of a repeater statute" and as such does not constitute cruel and unusual punishment. We conclude that the characterizations of the OAR and OWI statutes as penalty enhancers in *McAllister* and *Steeno* are more germane to the issue in this case than the distinction drawn in *Banks.*

The state also relies on *State ex rel. Plutshack v. Department of Health & Social Services,* 37 Wis. 2d 713, 155 N.W.2d 549 (1968), *overruled on other grounds, State ex rel. Winnie v. Harris,* 75 Wis. 2d 547, 249 N.W.2d 791 (1977). In *Plutshack,* interpreting the general repeater statute, sec. 939.62, Stats. 1965, this court

concluded that the "validity of former misdemeanor convictions cannot be attacked in a proceeding for additional punishment under the repeater statute on a subsequent misdemeanor conviction for the reason that the former convictions are valid until reversed." 37 Wis. 2d at 726 (citing 24B C.J.S. *Criminal Law* sec. 1961). The court reasoned that:

> the importance of the prior convictions is that they occurred but did not prevent subsequent violations. *Ingalls v. State* (1880), 48 Wis. 647, 658, 4 N.W. 785. Whether or not prior misdemeanor convictions are procedurally antiseptic in no way affects the fact that prior contact with the criminal law has not prevented subsequent violations.

*Plutshack,* 37 Wis. 2d at 727.

We are not persuaded by the reasoning of *Plutshack* or the sources upon which it relied. *Plutshack* distinguished between misdemeanors and felonies, apparently on the basis of the then-existing distinction between the right to counsel for felonies and misdemeanors. At that time, the state need only appoint counsel for indigents accused of misdemeanors punishable by a jail term of six months or more. The *Plutshack* court did not discuss the *Burgett* decision issued three months earlier. If *Plutshack* retains any precedential value, it must yield to *Burgett.*[6]

---

[6]In *State v. Madison,* 120 Wis. 2d 150, 353 N.W.2d 835 (Ct. App. 1984), the court of appeals quoted *Plutshack* but then applied the *Burgett* rule.

We also note *dicta* in *Wells v. State,* 40 Wis. 2d 724, 162 N.W.2d 634 (1968), applying *Burgett* to collateral attack of prior convictions under the general repeater statute, sec. 939.62. "It has been settled by the United States Supreme Court that a conviction in which the defendant was denied counsel or in which the

The state also asks us to consider *Schindler v. Clerk of Circuit Court,* 715 F.2d 341 (7th Cir. 1983), *cert. denied,* 465 U.S. 1068 (1984), in which the federal court of appeals interpreted Wisconsin's OWI statute, sec. 346.63, Stats. 1979-80. The court of appeals decided that an uncounseled first OWI conviction resulting in a civil forfeiture may be used as a basis for computing a prison sentence for a third OWI conviction under the same statute. Like the OAR statute at issue in this case, the OWI statute provided that a first conviction subjected the defendant to only a civil forfeiture, sec. 346.63(1), Stats. 1977-78. Therefore, the assistance of counsel was not constitutionally required in obtaining the first conviction. As one basis for its decision, the *Schindler* court applied *Lewis* and held that the first uncounseled OWI conviction was not used in the third OWI conviction to support guilt or to enhance the defendant's punishment. The court wrote that the first offense under the OWI statute served only to put violators on notice of the consequences of repeated offenses without initially subjecting them to criminal stigma.[7]

---

defendant was not represented by counsel but had not waived the right to counsel would be void under the repeater statute . . .. We do presume the trial court complied with the statute [requiring the court to advise the defendant that it would provide counsel in case of indigence]. However, the question of whether the accused validly waived his right to counsel can be raised." *Wells,* 40 Wis. 2d at 730-32.

[7]The *Schindler* court wrote:

Thus, when petitioner was sentenced as a third offender, it was not an attempt to 'punish' him for his first offense and uncounseled trial . . .. The initial proceeding against Schindler, though civil in nature, established his deviant conduct and classification for future drunk driving violations . . .. As in *Lewis,* the use of criminal sanctions is predicated on the defendant's status as an adjudicated offender, not on the reliability of the civil forfeiture proceedings.

*Schindler* does not govern this case. *Schindler's* holding is limited to a collateral attack on an uncounseled civil forfeiture conviction for a first offense in which counsel was not constitutionally required. In this case Baker does not challenge the first civil forfeiture offense; he alleges that two of his prior OAR criminal convictions were not constitutionally obtained.

For the foregoing reasons, we conclude that a defendant may collaterally attack, on constitutional grounds, a prior conviction for operating a motor vehicle after revocation (OAR) in a subsequent OAR proceeding.

### III.

We now turn to the state's argument that the constitutional grounds for collaterally attacking prior convictions for sentencing purposes are limited to violations of the right to counsel. The state contends that *Burgett* and its progeny apply specifically only to violations of the right to counsel under *Gideon v. Wainwright* and that those cases should not be extended to other constitutional violations. Baker's challenge to the third OAR conviction is on grounds that his due process rights were violated because he did not knowingly, voluntarily, and intelligently enter a guilty plea.

Some courts have confined the application of *Burgett* to convictions invalid under *Gideon*.[8] Other courts

*Schindler,* 715 F.2d at 346-347.

Like this court in *State v. Novak,* 107 Wis. 2d 31, 318 N.W.2d 364 (1982), see *supra* note 3, the *Schindler* court also refused to extend *Baldasar v. Illinois,* 446 U.S. 222 (1980), to the facts of that case. *Schindler,* 715 F.2d at 345.

[8]*See, e.g., United States v. Graves,* 554 F.2d 65 (3rd Cir. 1977) (en banc); *State ex rel. Collins v. Superior Court, Maricopa*

have concluded, however, that the protections of *Burgett* extend to other federal constitutional rights.[9]

■ We conclude that restricting *Burgett* to convictions violating the defendant's constitutional right to the assistance of counsel undermines the principle supporting *Burgett. Burgett* rests on the principle that a prior conviction may not be used to support guilt or enhance punishment if the prior conviction was obtained in violation of a constitutional right that would affect the reliability of the prior conviction, that is that would affect the integrity of the truth-finding process. As the United States Supreme Court stated in *Loper,* a conviction obtained in violation of the defendant's right to assistance of counsel lacks reliability. *Loper,* 405 U.S. at 484. In *Lewis,* the Court distinguished *Burgett, Tucker,* and *Loper* in part because the use of the prior convictions in those cases depended on the reliability of the prior convictions, whereas reliability of the prior conviction was not a factor under the federal gun laws. *Lewis,* 445 U.S. at 67. This narrow reading of *Burgett* supports the application of *Burgett* and its progeny to this case.

---

*County,* 754 P.2d 1346 (Ariz. 1988); *People v. Ingram,* 439 Mich. 288, 484 N.W.2d 241 (1992).

[9]*See, e.g., Lonberger v. Jago,* 635 F.2d 1189, 1193 (6th Cir. 1980), and *United States v. Johnson,* 612 F.2d 305, 306–07 (7th Cir. 1980) (both permitting collateral attack of a prior conviction on grounds of invalid guilty plea); *Beto v. Stacks,* 408 F.2d 313 (5th Cir. 1969) (barring evidence of prior conviction obtained in violation of Fourth Amendment); *State v. Holsworth,* 607 P.2d 845, 850–51 (Wash. 1980) (prior conviction in habitual criminal proceeding cannot rest on guilty plea not meeting standards of *Boykin).*

Baker is collaterally attacking his third prior conviction on the constitutional grounds that he did not knowingly, voluntarily, and intelligently enter a guilty plea. This attack on the constitutionality of the conviction undermines the reliability of the conviction. *Boykin v. Alabama,* 395 U.S. 238, 242-43 (1969). In addition, a guilty plea amounts to a waiver of three important constitutional rights—the privilege against self-incrimination, the right to a trial by jury, and the right to confront one's accuser—rights that serve in part to ensure the reliability of the outcome of a criminal trial. See *Boykin,* 395 U.S. at 243. Because a guilty plea accepted in violation of constitutional requirements raises doubts about the reliability of the conviction, the conviction cannot be used to support guilt or to enhance punishment for a subsequent offense.

The question then is whether Baker has demonstrated that his third OAR conviction violated the due process requirement that a defendant enter a guilty plea knowingly, voluntarily, and intelligently. Baker argues that the record does not affirmatively show that he knowingly, intelligently and voluntarily entered his guilty plea as required by *Boykin* and *State v. Bangert,* 131 Wis. 2d 246, 389 N.W.2d 12 (1986). In *Boykin,* the United States Supreme Court held that it was "error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary." 395 U.S. at 242. The Court noted that a guilty plea constitutes a waiver of three important constitutional rights. "We cannot presume a waiver of these three important federal rights from a silent record." 395 U.S. at 243.

The transcript of the third OAR conviction shows that Baker was not present at the hearing. His attorney

was present and appears to have entered a guilty plea for Baker. The Brown County Circuit Court transcript from September 11, 1986, reads in its entirety as follows:

THE COURT: 86TC-4971 State versus Christopher Baker. Charged driving after suspension or revocation but for the third time. This matter was set for jury today at eight—

MR. SPEERSCHNEIDER [Attorney for Baker]:—Correct, Your Honor.

THE COURT: On March 25th it says in the teletype he was revoke or, no, on April 28th he was revoke for six months.

MR. SPEERSCHNEIDER: Yeah. Your Honor, he's—he's agreed to plead to the mandatory minimum and he wants to start serving the jail time on September 15th.

THE COURT: Okay. If you're satisfied that's a voluntary; intelligent plea I'll accept it and adjudge him guilty; impose the minimum which adds up to—oh, it's a thousand dollars, hundred and fifty dollar assessment, twenty dollar cost, twenty dollar crime victim witness assistance surcharge. That equals eleven hundred and ninety dollars. Thirty days in jail. Seven days off for good behavior with Huber privileges if he's working. Report on September 15th. Is that what you said?

MR. SPEERSCHNEIDER: Yeah. That's what he wants to—

THE COURT:—If he needs Huber he should make those arrangements beforehand.

MR. SPEERSCHNEIDER: He needs 'em. So—

THE COURT:—His license is revoked for another period of six months. How much time does he need to pay eleven hundred and ninety dollars?

MR. SPEERSCHNEIDER: That's a—he—he does work. I—if you could get 'em I would—six months to pay. That's a pretty hefty fine.

THE COURT: Okay. Paid in six months. If not, he's a hundred and twenty days in jail.

(Whereupon, said proceeding was concluded.)

Under sec. 971.04(2), Stats. 1985–86, a defendant charged with a misdemeanor[10] may be excused from attending all proceedings and may "authorize his attorney in writing to act on his behalf on any manner, with leave of the court." (The record before us does not contain any written authorization by Baker for the attorney to act on Baker's behalf.) Although a defendant charged with a misdemeanor need not be present at a plea hearing, the statutory and constitutional requirements for entering a guilty plea still apply. *State v. Krause*, 161 Wis. 2d 919, 930, 469 N.W.2d 241 (Ct. App. 1991).

The constitutional standard set forth in *Boykin* requires an affirmative showing or an allegation and evidence which show that the defendant entered the plea knowingly, voluntarily, and intelligently. *Boykin* does not set forth the specific procedural requirements that a trial court must follow. Section 971.08, Stats., as interpreted by this court, mandates the appropriate procedures which the circuit court must follow in ascertaining a defendant's understanding of the nature of the charge.

---

[10]We characterize the third OAR conviction as a misdemeanor because the maximum term of imprisonment is 9 months. Section 343.44(2)(c), Stats. 1985–86. A term of imprisonment of less than one year is served in a county jail, sec. 973.02, Stats. 1985–86, and all crimes not punishable by imprisonment in the Wisconsin state prisons are misdemeanors, sec. 939.60, Stats. 1985–86.

*Bangert,* 131 Wis. 2d at 267. The *Bangert* court required circuit courts to follow one of three methods to determine the defendant's understanding of the nature of the charge: First, the circuit court may summarize the elements of the crime charged by reading from the appropriate jury instructions or from the applicable statute. Second, the circuit court may ask the defendant's counsel whether counsel explained the nature of the charge to the defendant and request counsel to summarize the extent of the explanation, including a reiteration of the elements, at the plea hearing. Third, the circuit court may expressly refer to the record or other evidence of defendant's knowledge of the nature of the charge established prior to the plea hearing. *Bangert,* 131 Wis. 2d at 268.

The circuit court did not follow any of these three procedures. The plea hearing does not demonstrate a personal, voluntary waiver of the defendant's constitutional rights and fails to show an understanding of the nature of the charge. Apparently the circuit court presumed that the plea by defense counsel was a plea knowingly, voluntarily, and intelligently entered by the defendant. A court may presume in most cases that defense counsel routinely explains the nature of the charges to the defendant, thus satisfying the constitutional requirements of *Boykin. Bangert,* 131 Wis. 2d at 259 (citing *Henderson v. Morgan,* 426 U.S. 637, 647 (1976), and *Marshall v. Lonberger,* 459 U.S. 422, 436–37 (1983)).

In *Bangert,* however, we stated that when a defendant shows a prima facie violation of sec. 971.08, the state bears the burden of showing that the plea was entered knowingly, voluntarily, and intelligently. We wrote:

In essence, the state will be required to show that the defendant in fact possessed the constitutionally required understanding and knowledge which the defendant alleges the inadequate plea colloquy failed to afford him . . . . [W]hen a defendant shows a *prima facie* violation of sec. 971.08 or a failure of the court to meet other enumerated obligations, including the duty to inform him of his constitutional rights or a failure to ascertain his knowledge thereof, the state bears the burden of showing by clear and convincing evidence that the plea was knowingly and voluntarily made.

131 Wis. 2d at 275 (citation omitted).

The proceeding in this case facially violated sec. 971.08(1). The burden thus shifts to the state to show that Baker knowingly, voluntarily and intelligently entered the plea and waived his constitutional rights. The only evidence before us is the transcript of the plea hearing.

We conclude, as did the circuit court and the court of appeals, that the state has not established that Baker knowingly, voluntarily, and intelligently waived his constitutional rights as required by *Boykin.* See *Krause,* 161 Wis. 2d at 931. We agree with the circuit court and the court of appeals that in light of *Boykin* and *Bangert,* Baker's third OAR conviction is constitutionally infirm for sentencing purposes under sec. 343.44. We therefore affirm that part of the court of appeals' decision which affirms the circuit court's setting aside of Baker's third OAR conviction.

75

## IV.

We now examine Baker's challenge to the second OAR conviction in which Baker was not represented by counsel. Baker asserts that he did not waive his right to counsel. The transcript of the proceedings of this earlier conviction is not available; it has been lost. The only papers before us relating to whether Baker waived the assistance of counsel at the second OAR proceeding are as follows: (1) A printed form entitled "Minutes for Trial" which states that Baker appeared in person and pleaded guilty. The deputy clerk did not alter the line printed on the form stating "All rights explained by the Court." (2) An affidavit submitted by a legal secretary employed by the law firm representing Baker in this proceeding, stating that the Brown County Clerk of Courts told her that the circuit court did not have any transcript or transcript notes of the proceeding and that the court reporter of the second proceeding (who now lives in Minnesota) told her that the transcript notes "were probably destroyed." (3) Baker's affidavit stating that at the April 28, 1986, hearing "he was unrepresented by counsel, and did not at any time affirmatively waive his right to counsel."

To determine whether this record is sufficient to support Baker's allegation that he did not validly waive his right to counsel, we must examine the interrelationship of two presumptions that conflict in this case. One presumption is that upon collateral attack a judgment carries with it a presumption of regularity. *Johnson v. Zerbst,* 304 U.S. 458, 468 (1938). The other is that courts indulge in every reasonable presumption against waiver of counsel, *Johnson v. Zerbst,* 304 U.S. at 464-65, and that waiver will not be presumed from a silent record.

*Burgett,* 389 U.S. at 114-15; *Spencer v. State,* 85 Wis. 2d 565, 571, 271 N.W.2d 25 (1978). "The record must show, or there must be allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." *Carnley v. Cochran,* 369 U.S. 506, 516 (1962).

We resolve this apparent conflict of presumptions by applying the following burdens of production of evidence and persuasion on the parties. Because the defendant must overcome the presumption of regularity attached to the prior conviction, the defendant bears the initial burden of coming forward with evidence to make a prima facie showing of a constitutional deprivation in the prior proceeding. If the defendant makes a prima facie showing of a violation of the right to counsel, the state must overcome the presumption against waiver of counsel and prove that the defendant knowingly, voluntarily, and intelligently waived the right to counsel in the prior proceeding.

Baker attempted to meet his burden of making a prima facie showing of a constitutional violation in the second OAR conviction by submitting two sworn affidavits, one stating that his attorneys made a good faith effort to find records of the prior proceeding but could not and the other stating that he at no time waived his right to counsel. The circuit court declared that Baker's burden was "to show *from the record* that his right to counsel was violated." (Emphasis in original.) The court of appeals suggested that Baker's proof was deficient, that his affidavit should have contained facts on which he rested his legal conclusion, and that he should have attempted to reconstruct the trial record from court minutes, docket entries, and testimony of people who were present at the proceeding in question.

■■■■■

Whether a party has met its burden of establishing a prima facie case is a question of law that we decide *de novo. Burg v. Miniature Precision Components, Inc.,* 111 Wis. 2d 1, 12, 330 N.W.2d 192 (1983). We conclude that Baker met his burden of production under the circumstances of this case. Nothing in the record shows that the court of appeals' suggestions are practicable in this case. Thus the state had the burden of proving that Baker knowingly, voluntarily, and intelligently waived his right to counsel. The state has not met this burden; the form entitled "Minutes for Trial" does not amount to an affirmative showing that Baker waived his right to counsel.[11]

■■■■

We hold that Baker's second OAR conviction is constitutionally infirm for sentencing purposes under sec. 343.44, because it was obtained without counsel and without waiver of counsel. Accordingly, we reverse that part of the decision of the court of appeals which affirms the circuit court's order refusing to set aside the second OAR conviction. We remand the cause for further proceedings.

*By the Court.*—The decision of the court of appeals is affirmed in part, reversed in part, and the cause is remanded.

---

[11]In *State v. Fussy,* 467 N.W.2d 601 (Minn. 1991), the Minnesota Supreme Court applied similar burdens on the parties in a similar fact situation and reached the same result as we do. See also *State v. Orr,* 375 N.W.2d 171, 179–80 (N.D. 1985), and *State v. Holsworth,* 607 P.2d 845, 850–52 (Wash. 1980).