HRUZ, J.[1]
¶1 Jessy Rivard appeals a judgment of conviction, entered upon his no-contest plea, to third-offense operating a motor vehicle while intoxicated (OWI). He asserts the circuit court erred by denying his motion to collaterally attack a 2006 second-offense OWI conviction. Rivard was not represented by counsel during his second-offense OWI proceedings. He now claims that his waiver of his right to counsel in those proceedings was not knowing, intelligent and voluntary, due to an allegedly defective colloquy with the court regarding his waiver. We affirm.
BACKGROUND
¶2 In 2016, Rivard was arrested and charged with two counts, OWI and operating with a prohibited blood alcohol concentration, contrary to WIS. STAT. § 346.63(1)(a) and (b), respectively, both as third offenses. Rivard moved to collaterally attack his 2006 second-offense OWI conviction, seeking to prevent use of the prior conviction to enhance the penalties for sentencing purposes in this case. Rivard had waived his right to counsel during a combined plea and sentencing hearing in the 2006 case. In support of his collateral attack motion, Rivard averred the following in an affidavit:
5. ... I appeared before the judge without a lawyer. At no point during the proceedings was I neither [sic] told the advantages and benefits of counsel nor the difficulties and disadvantages of self-representation. I did not know that I needed a lawyer or what one might do for me under the circumstances.
6. I did not know that a lawyer could do anything in a drunk driving case if I had a test over the limit. I did not understand that a lawyer would have been able to negotiate the fines or other aspects of a sentence; could file motions challenging evidence in my case; and could argue that I had a different alcohol concentration at the time I was driving compared with the time that the chemical test was performed, which could have affected the penalties or the case altogether.
....
8. Had I known that a lawyer could assist me by raising challenges or negotiating on my behalf, I would have sought a lawyer to assist me.
¶3 For approximately one month after Rivard filed his motion, both parties were under the assumption that the court reporter notes from the combined plea and sentencing hearing in the 2006 case had been destroyed pursuant to local court administration rules. However, circuit court personnel eventually discovered that the reporter notes had not been destroyed, and a transcript of the 2006 hearing (the "2006 transcript") was prepared.[2]
¶4 The 2006 transcript shows that, at the plea and sentencing hearing's beginning, the prosecutor went off the record to discuss the case with Rivard. The prosecutor informed the circuit court that he did not have "a chance to discuss" the case previously with Rivard. After this off-the-record discussion, the prosecutor informed the court, on the record, that the parties had reached a plea deal. Specifically, the prosecutor stated:
Rivard is going to enter a plea of guilty or no contest to OWI second; that we won't file a prohibited alcohol concentration charge; and we will recommend a slight variation on the guidelines which would be-my understanding is that the blood test result was [0].24. The PBT was [0].26. And so the guidelines call for 957, ten days['] jail, and a 14-month driver's license revocation. Mr. Rivard has a commercial driver's license, and so we're going to recommend to the Court that the Court go with a minimum driver's license suspension period, which would be 12 months but the [0].20 and above for the fine which would be $1,020, ten days['] jail which could be served on two consecutive weekends, developing a driver's safety plan, and completing an alcohol assessment and follow through.
¶5 The circuit court then engaged Rivard in the following colloquy:
The Court: Thank you. Before I can ask you anything about [the plea] agreement, Mr. Rivard, I want to make sure, again, that you understand that you have the right to have an attorney and an attorney at public expense if you cannot afford one.
[Rivard]: Right.
The Court: You also have the option, as I said then, to apply to the public defender for representation. If you don't qualify for their services, to ask me to appoint one for you; to hire your own attorney; or you have the option, as well, of representing yourself.
Do you understand that?
[Rivard]: Yes.
The Court: Knowing of all those options, is it your request to represent yourself today?
[Rivard]: Yes, it is.
....
The Court: You understand Mr. Sortedahl represents the State?
[Rivard]: Yup.
The Court: He's here to prosecute you. He can't act as your attorney. You understand that?
[Rivard]: Right.
....
The Court: You have had legal representation in the past, correct?
[Rivard]: Yes.
The Court: So you know the benefits of having an attorney in terms of someone who can explain what's going on, be your spokesperson, negotiate with the State, identify problems in the State's case. You're aware of all that?
[Rivard]: Yes.
The Court: And knowing that, you still want to represent yourself?
[Rivard]: Yes.
The court then found that Rivard knowingly, intelligently and voluntarily waived his right to counsel, and that he was competent to represent himself. It also found Rivard knowingly, intelligently and voluntarily pleaded no contest to the second-offense OWI charge, stating: "[H]e does so with full understanding of the nature of the charge, the maximum possible penalty that he may face, together with all the rights he's giving up, and the Court will accept his plea." Rivard was then sentenced consistent with the State's recommendation.
¶6 Rivard was the sole witness who testified at the hearing on his motion to collaterally attack the conviction in his 2006 second-offense OWI case. He had a limited memory of that case. Rivard could not remember many details, such as whether: (1) he appeared in court between the date of his arrest and when he was released from custody; (2) he was ever provided with a criminal complaint; (3) he appeared in court for an initial appearance; or (4) he talked to the prosecutor off the record at the beginning of his plea and sentencing hearing. He also could not remember how he had learned of his plea and sentencing hearing date. Rivard testified, however, that he could recall certain specific details, such as: (1) he was not told about the difficulties or disadvantages of self-representation; (2) he did not know at the time what an attorney "could do for [him] in a drunk driving case"; and (3) he did not know at the time the "length or time" he would potentially have to serve in jail.
¶7 The State questioned Rivard about inconsistencies between his affidavit and his testimony, based on the 2006 transcript. Rivard testified that his recollection of the plea and sentencing hearing improved after he read the transcript. He remembered the circuit court reviewed his "right to have an attorney," but he could not provide an explanation for why he did not include this fact in his affidavit. Similarly, Rivard now remembered the court informed him that he could apply for a public defender or have an attorney appointed by the court if he did not qualify, but, again, he "[did]n't know" why he did not include this fact in his affidavit.
¶8 The circuit court denied Rivard's motion. It found Rivard had made a prima facie showing that his waiver of his right to counsel in 2006 was constitutionally deficient. See State v. Ernst , 2005 WI 107, ¶25, 283 Wis. 2d 300, 699 N.W.2d 92. Nonetheless, the court concluded the State had proved, by clear and convincing evidence, that Rivard entered his waiver of counsel knowingly, intelligently and voluntarily. See id. , ¶27 (citing State v. Klessig , 211 Wis. 2d 194, 207, 564 N.W.2d 716 (1997) ). It agreed with the State that "the [2006] transcript ... does indicate clearly and convincingly that Mr. Rivard's plea was freely and intelligently given."[3] It further found that it could infer from the transcript that Rivard "knew the charge against him ... and at least in a general sense what the potential penalties are that he faced." It also found Rivard's testimony not
overly compelling or credible because he seems to have a limited memory. On some dates he remembers a lot of what happened and other times he can hardly remember anything. I don't know how you can remember certain things with some specificity or be completely clueless or not have any memory of some other things.
So the Court does not believe that Mr. Rivard went through this blindly or in an uninformed fashion, that he didn't truly understand what he was up against or what advantages and disadvantages he might have by having an attorney represent him.
Rivard now appeals.
DISCUSSION
¶9 In Klessig , our supreme court used its "superintending and administrative authority" to create a "court-made procedural rule" that instructed courts to use a colloquy in cases involving defendants' waiver of the right to counsel, in order to serve "the dual purposes of ensuring that [they are] not deprived of [their] constitutional rights and of efficiently guarding our scarce judicial resources." Ernst , 283 Wis. 2d 300, ¶18 (quoting Klessig , 211 Wis. 2d at 206 ). It mandated that courts conduct a colloquy designed to ensure defendants "(1) made a deliberate choice to proceed without counsel, (2) w[ere] aware of the difficulties and disadvantages of self-representation, (3) w[ere] aware of the seriousness of the charge or charges against [them], and (4) w[ere] aware of the general range of penalties that could have been imposed on [them]." Klessig , 211 Wis. 2d at 206.
¶10 Defendants are entitled to collaterally attack their prior conviction if their waiver of their right to counsel was constitutionally deficient. See Ernst , 283 Wis. 2d 300, ¶27. The procedure for defendants to challenge the validity of their waiver of their right to counsel is similar to the two-step procedure for when they challenge the validity of their guilty plea waiver, as outlined in State v. Bangert , 131 Wis. 2d 246, 389 N.W.2d 12 (1986). Ernst , 283 Wis. 2d 300, ¶31. They must first make a prima facie showing that their constitutional right to counsel in a prior proceeding was violated. Id. , ¶25. If defendants are successful, the burden then shifts to the State to prove by clear and convincing evidence that the defendants' waiver of their right to counsel was knowing, intelligent and voluntary. Id. , ¶27.
¶11 We begin by discussing the circumstances that occurred in this case, as it helps frame our discussion of the issues on appeal. Here, we have a collateral attack on an approximately ten-year-old OWI conviction, in which the appellate record contains the relevant transcript from that prior case, but we have no other record documents from that prior case.[4] In addition, Rivard moved to collaterally attack his second-offense OWI when he was under the assumption that the transcript from his plea and sentencing hearing in that case had been destroyed. Thus, for him to make his prima facie case when he initially moved the circuit court in 2017, he could not rely on the transcript to prove that the court failed to conduct a proper Klessig colloquy regarding his waiver of counsel.
¶12 Instead, Rivard needed to aver specific facts about the colloquy that made it constitutionally deficient. See Ernst , 283 Wis. 2d 300, ¶25. He did so, averring that essentially two out of the four Klessig requirements did not occur: (1) that he was unaware of the difficulties and disadvantages of self-representation; and (2) that he was unaware of the seriousness of the charge or charges against him. See Klessig , 211 Wis. 2d at 206. Absent a transcript of the 2006 plea and sentencing hearing, whether Rivard's averments would have been sufficient to make a prima facie showing and, subsequently, whether the State could overcome his averments by clear and convincing evidence, would have likely depended on how much weight the court would have given to his affidavit, based on its credibility assessment of Rivard following his testimony at an evidentiary hearing. See Connor v. Connor , 2001 WI 49, ¶¶31, 33, 243 Wis. 2d 279, 627 N.W.2d 182 (observing that the circuit court may properly give little weight to a witness's affidavit in its capacity as the "ultimate arbiter" of witness credibility).
¶13 But the 2006 transcript was eventually produced. With the transcript containing his waiver-of-counsel colloquy now available, it became evident that Rivard had been aware of the difficulties and disadvantages of self-representation and the seriousness of the charge or charges against him-contrary to his averments. Meanwhile, the transcript showed that the circuit court, during the waiver-of-counsel colloquy, did not specifically address whether Rivard was aware of the general range of penalties that could have been imposed on him. See Klessig , 211 Wis. 2d at 206.
¶14 At the collateral attack motion hearing, the parties correctly began by arguing whether Rivard made his prima facie showing. Notably, and due to the 2006 transcript's production, Rivard's argument at the motion hearing shifted away from the assertions in his original motion and affidavit. In particular, and as just noted, the only Klessig requirement he then claimed remained unsatisfied was his awareness of the general range of penalties that could have been imposed on him. The State then disputed this lack of awareness.
¶15 The State called Rivard as an adverse witness and elicited his testimony before the circuit court determined that Rivard made his prima facie showing, thereby shifting the burden to the State. Thus, the parties' arguments at the motion hearing seemed to conflate the two distinct concepts of whether Rivard made a prima facie showing, and whether the State had proven by clear and convincing evidence that Rivard's waiver was, nonetheless, knowing, intelligent and voluntary.
¶16 The parties' conflation of the Ernst procedure is manifest in their arguments on appeal. We review whether Rivard made a prima facie showing independent from the circuit court. See Ernst , 283 Wis. 2d 300, ¶26. Yet, neither party addresses this issue on appeal. Instead, both parties start with Ernst 's second step and argue whether the State, in referencing Rivard's affidavit, the 2006 transcript, and his testimony at the collateral attack motion hearing, clearly and convincingly demonstrated that Rivard's waiver of his right to counsel was knowing, intelligent and voluntary.
¶17 Beyond the abovementioned issues, there is another challenge in assessing this appeal's merits in that the appellate record lacks probative documents from Rivard's second-offense OWI case. These documents would include the criminal complaint, among others.
¶18 For these foregoing reasons, we address the issues on appeal in the following way. First, we assume without deciding that Rivard made a prima facie showing.[5] We therefore consider whether the State has carried its burden to prove, by clear and convincing evidence, that Rivard's waiver of his right to counsel was knowing, intelligent and voluntary. See Ernst , 283 Wis. 2d 300, ¶27. Within this framework, we address the parties' respective arguments as best as we can discern them.
¶19 "Clear and convincing evidence" is an intermediate standard of proof, less than "beyond a reasonable doubt" but greater than "preponderance of the evidence." See Outagamie Cty. v. Melanie L. , 2013 WI 67, ¶84, 349 Wis. 2d 148, 833 N.W.2d 607. Additionally, a "presumption of regularity" attaches to judgments subjected to collateral attack. State v. Baker , 169 Wis. 2d 49, 67, 485 N.W.2d 237 (1992) ; see also Ernst , 283 Wis. 2d 300, ¶31 n.9 (declining to apply a "presumption against waiver" of the right to counsel when the burden shifts to the State in collateral attack situations because doing so would "ignore ... the 'presumption of regularity' that attaches to final judgments.") (citation omitted). The State may utilize "any evidence" to show defendants "in fact possessed the constitutionally required understanding" that they allege the inadequate colloquy failed to afford them. See Bangert , 131 Wis. 2d at 274-75. For example, the State may use "the entire record to demonstrate by clear and convincing evidence that the defendant[s] knew and understood the constitutional rights which [they] would be waiving." Id. at 275. If the State fails to meet its burden of proof, defendants will be entitled to attack, successfully and collaterally, their prior conviction. Ernst , 283 Wis. 2d 300, ¶27.
¶20 We review de novo whether defendants validly waived their right to counsel, although we benefit from the analysis of the circuit court. State v. Gracia , 2013 WI 15, ¶35, 345 Wis. 2d 488, 826 N.W.2d 87. We will uphold the circuit court's findings of historical fact unless they are clearly erroneous. See WIS. STAT. § 805.17(2) ; State v. Finley , 2016 WI 63, ¶59, 370 Wis. 2d 402, 882 N.W.2d 761. In so doing, we examine the record for evidence to support the circuit court's findings of fact. See Becker v. Zoschke , 76 Wis. 2d 336, 347, 251 N.W.2d 431 (1977).
¶21 We conclude, based on the record before us, that Rivard knowingly, intelligently and voluntarily waived his right to counsel. The entirety of Rivard's plea and sentencing hearing shows he "knew and understood" the constitutional rights that he would be waiving, including an awareness of the general range of penalties that could have been imposed on him. See Bangert , 131 Wis. 2d at 275.
¶22 Rivard contends the circuit court erred when it found he knew what the charges were against him and, "in a general sense," what the potential penalties were. He argues that "nowhere within [the] four corners" of the transcript is there "any colloquy" stating: (1) that there is a "minimum jail sentence associated with" second-offense OWIs; (2) that there is an amount of "maximum jail time which the court had the authority to impose"; (3) an "explanation of what penalties may befall Mr. Rivard regarding his commercial [driver's] license"; and (4) the "range of possible fines."
¶23 Rivard's argument is misplaced. This is primarily because later in the 2006 transcript, which reflected Rivard's waiver of his right to counsel, the circuit court expressly found as follows:
The Court, will find then, based on my conversation with this young man, his testimony, [and] observations of him, will find that Jessy Rivard does freely, voluntarily, and knowingly enter his plea of no contest to the single count of the criminal complaint. I'll find that he does so with full understanding of the nature of the charge, the maximum possible penalty that he may face , together with all the rights that he's giving up ....
(Emphasis added.) While the court made this finding regarding Rivard's knowledge of the maximum possible penalties he was facing immediately after the plea colloquy, that colloquy itself had immediately followed the one the court held regarding Rivard's waiver of counsel. Either Rivard was aware of the potential penalties he faced that day or he was not. With the court having made that specific finding on that day, we conclude that the record plainly demonstrates Rivard had the required awareness of the general range of penalties that could have been imposed on him at the time he waived his right to counsel. To overcome this finding, Rivard would need to show that the court's finding was clearly erroneous, which he has failed to do. To the contrary, we conclude the record supports the court's finding.
¶24 Specifically, we note the following facts that the circuit court reasonably relied upon as supportive of Rivard's awareness. First, Rivard spoke with the prosecutor at the beginning of the hearing, yet he did so off of the record. Immediately after this discussion, the prosecutor informed the court that the State recommended "a slight variation on the guidelines." This recommendation entailed: a fine, the minimum twelve month driver's license suspension period; ten days in jail; a driver's safety plan; and completion of an alcohol assessment program.
¶25 Second, Rivard had been given a copy of the criminal complaint at some point prior to him waiving his right to counsel.[6] A criminal complaint is statutorily required to include "the possible penalties for the offenses charged therein." WIS. STAT. § 970.02(1) ; State v. Wideman , 206 Wis. 2d 91, 103-04, 556 N.W.2d 737 (1996). Because Rivard is attacking a final judgment, we presume his criminal complaint adhered to the statutory requirements. See Baker , 169 Wis. 2d at 67. Accordingly, for purposes of our review, Rivard received in 2006 a criminal complaint that listed the possible penalties for his second-offense OWI charge.
¶26 Third, Rivard had appeared in court in previous matters, and he could read and understand the English language. Thus, Rivard cannot credibly argue that he did not understand the circuit court's questions regarding his charges. Nor can he-or does he-claim that he did not understand the information within the court documents, including the criminal complaint, that every defendant in his position would have received due to normal court operating procedures. See State v. Bohlinger , 2013 WI App 39, ¶20, 346 Wis. 2d 549, 828 N.W.2d 900. We therefore agree with the court that the foregoing is clear proof that Rivard knew both what the charges against him were and what potential penalties he faced.
¶27 Our conclusion is bolstered by Wisconsin's Consolidated Court Automation Programs (CCAP) records. Although CCAP documentation is absent from the record, we may nonetheless take judicial notice of it. See Kirk v. Credit Acceptance Corp. , 2013 WI App 32, ¶5 n.1, 346 Wis. 2d 635, 829 N.W.2d 522. At the collateral attack motion hearing, the State relied on the CCAP record from Rivard's second-offense OWI in arguing that Rivard knowingly, intelligently and voluntarily waived his right to counsel. That record indicates Rivard made an initial appearance on the second-offense OWI before a circuit court commissioner approximately two months prior to his plea and sentencing hearing. The CCAP entry states that at his initial appearance, the court commissioner found Rivard "understands charges and possible penalties" and noted that he "waives reading." Thus, we are further persuaded the circuit court properly concluded Rivard knew both what the charges against him were and the potential penalties he faced.
¶28 Rivard asserts the circuit court's finding that he received the criminal complaint is clearly erroneous. Therefore, he further contends, it cannot be used as evidence that he was aware of the general range of penalties that could have been imposed on him at the time he waived his right to counsel. We disagree.
¶29 The circuit court's factual finding is not clearly erroneous, largely because the court reasonably found incredible Rivard's contrary testimony. When the circuit court acts as the finder of fact, it is the ultimate arbiter of a witness's credibility. See Bank of Sun Prairie v. Opstein , 86 Wis. 2d 669, 676, 273 N.W.2d 279 (1979). The court expressly found Rivard not "overly compelling or credible because he seems to have a limited memory. On some dates he remembers a lot of what happened and other times he can hardly remember anything."
¶30 Additionally, Rivard's affidavit directly conflicts with some of his hearing testimony. Rivard averred in his affidavit-which, again, he executed prior to the parties discovering the 2006 transcript-that the circuit court in 2006 never told him "the advantages and benefits of counsel [ ]or the difficulties and disadvantages of self-representation." Yet, the transcript shows the court explicitly asked him if he "had legal representation in the past" and if he knew "the benefits of having an attorney in terms of someone who can explain what's going on, be your spokesperson, negotiate with the State, [and] identify problems in the State's case." Rivard answered "yes" to the questions.
¶31 Moreover, Rivard did not initially allege that he was unaware of the general range of penalties he faced. That claim was nowhere in his affidavit. It is only after the 2006 transcript became available that he asserted the circuit court's colloquy was deficient in this regard. Indeed, his unawareness of this Klessig requirement is largely what his arguments on appeal rest upon, and not any of the other deficiencies he had previously claimed to have occurred. In short, the record lends force to the court's finding Rivard not credible in his representations to the court because of the timing as to when he asserted certain arguments and his many statements in his affidavit that the State strongly impeached.
¶32 Because the circuit court found Rivard's testimony lacked credibility, the court properly gave it little or no weight. Rivard stated that he did not remember if he was ever provided with a criminal complaint, meaning he acknowledges a possibility that he did receive it. Further, Rivard spoke with the prosecutor at the beginning of the plea and sentencing hearing in the 2006 case to "discuss" the case with him before the court took his plea. Consequently, the court could reasonably find either Rivard had received the criminal complaint or, at minimum, he knew the information therein, because of the foregoing facts, his incredible testimony, and the presumption of regularity that attaches to judgments during an attempted collateral attack. Therefore, in all, the court's factual finding that Rivard knew the general range of penalties he faced when he waived his right to counsel is not clearly erroneous.
¶33 Rivard's lack of credibility is also fatal to his final argument. In essence, he asserts the circuit court failed to give due weight to his testimony that "he did not understand the full panoply of consequences, penalty-wise, which he faced." He further argues that his lack of knowledge "is consistent" with the court's failure to explicitly discuss the range of penalties in its colloquy. Yet, in light of Rivard's testimony being deemed incredible, the court was within its province to reject his testimony on these matters because it conflicted with other evidence. See Opstein , 86 Wis. 2d at 676. As we have previously discussed, other direct and circumstantial evidence permitted the court to find that Rivard knew the general range of penalties he faced when he waived his right to counsel.
¶34 In all, we conclude the circuit court properly denied Rivard's motion to collaterally attack that second-offense OWI conviction because the State proved by clear and convincing evidence that his waiver of his right to counsel was knowing, intelligent and voluntary.
By the Court. -Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

We do not imply that counsel for Rivard acted without due diligence in attempting to produce the combined plea and sentencing hearing transcript.

The circuit court misspoke in this instance at Rivard's collateral attack motion hearing. The hearing's purpose was to determine whether Rivard's waiver of his right to counsel in 2006 was knowing, intelligent and voluntary, not whether he entered a knowing, intelligent and voluntary no-contest plea. The balance of the court's comments at that hearing make clear that when it referenced Rivard's plea, it actually meant Rivard's waiver of his right to counsel.

We note that Rivard's appendix is deficient and noncompliant with Wis. Stat. Rule 809.19(2)(a). Rivard included only his third-offense OWI judgment of conviction. We remind Rivard's counsel that appellants are required to include in their appendices "the findings or opinion of the circuit court [and] limited portions of the record essential to an understanding of the issues raised, including oral or written rulings or decisions showing the circuit court's reasoning regarding those issues ...." Id. In this case, other documents, such as the 2006 transcript and the transcript from Rivard's motion hearing, are plainly "essential to an understanding of the issues raised ...." Id.

We question whether Rivard did, in fact, "point to facts that demonstrate[d] that he ... 'did not know or understand the information which should have been provided' in the previous proceeding and, thus, did not knowingly, intelligently, and voluntarily waive his ... right to counsel." State v. Ernst , 2005 WI 107, ¶25, 283 Wis. 2d 300, 699 N.W.2d 92 (citation omitted). We do so because our understanding of State v. Klessig , 211 Wis. 2d 194, 564 N.W.2d 716 (1997), Ernst , and their progeny suggests that the threshold for making a prima facie showing is slightly higher when defendants allege their waiver of their right to counsel was constitutionally deficient on collateral attack than when defendants challenge the validity of their waiver of their right to counsel on direct review. On appeal, however, Rivard does not argue that he did make a prima facie showing, and the State similarly does not argue that Rivard did not make a prima facie showing. Given the parties' lack of adversarial briefing and their assumptions, even on our de novo review, that the circuit court properly determined Rivard made his prima facie showing, we focus on the second step of the Ernst burden-shifting framework.

Rivard claims the circuit court's finding of this fact is clearly erroneous because he "never stated that he recalled having received a copy" of the criminal complaint. For reasons we explain below, however, we conclude the court's finding is not clearly erroneous.